SANDERS *et al. v.* MAYOR ETC. OF GAINESVILLE.

1. A contract between a city and a private corporation, whereby the latter agrees to pave a street for a total sum, one third of the cost of which is to be paid on completion of the work, and the balance in two equal instalments, payable respectively twelve and twenty-four months after the acceptance of the work, amounts to the creation of a debt

within the purview of the constitutional prohibition against creating new debts without the assent of two thirds of the voters, expressed in an election held for that purpose. Such contract is not made legal by the levy of a tax for the current year to pay the city's share of the expense.

(a) If a contract for the construction of a public improvement has been let, and an assessment levied to pay such contract price, the validity of such contract is essential to the validity of the assessment; since other- wise the assessment would be levied to pay a claim not legally due against the city.

(b) In a case of the character just indicated, no estoppel will arise against an abutting-property owner, on account of the fact that the pavement was completed before the filing of the petition, to deny the validity of the assessment, especially where such property owner entered his pro- test against the construction of the improvements.

2. Where an act of the legislature authorizes the paving of streets in a city, and the collection of a special assessment against abutting land by execution, and provides that the owners of such land may file an affidavit of illegality and may contest the whole or any part of the amount so claimed, the levy of the assessment is not void on the ground that the owner is not afforded due process of law.

3. Where a street in a city was paved, and an assessment for the local improvement was made against the property abutting thereon, several owners of such property could join in an equitable action to have the entire assessment declared void on the ground that the municipal authorities were without power to make it, and that the contract be- tween the city and the contractor who did the work was illegal and furnished no valid basis for the making of such assessment.

(a) The fact that each owner of such abutting property might file an affidavit of illegality to an execution levied upon his property did not prevent several owners of such property from joining in the common attack upon the validity of the assessment in order to save a multi- plicity of suits.

(b) Regenstein v. City of Atlanta, 98 Ga. 167 (25 S. E. 428), and Mayor & Council of Gainesville v. Dean, 124 Ga. 750 (53 S. E. 183), distin- guished.

FEBRUARY 27, 1914.

Petition for injunction. Before Judge Jones. Hall superior court. May 2, 1913.

R. J. Sanders and several other persons instituted an action against the Mayor and Council of the City of Gainesville, to enjoin the enforcement of executions for certain amounts to cover alleged assessments against the several properties of the plaintiffs, abutting on Main Street, for pro rata portions of the cost of paving the street. The street extended from the railroad station to the busi- ness center of the city, being about one half mile in length, and was the principal street over which traffic passed between those

points. The several properties of the plaintiffs were somewhat remote from the business center. It was alleged that in 1893 the street, for nearly its entire length, was paved with a substantial macadam pavement, "covering over half of the width of the street," and that the abutting owners had paid their proportionate parts of the cost. In 1912, when the mayor and council were considering the pavement of the entire street with a bitulithic pavement, the plaintiffs presented a protest against assessment for such pavement, on the ground that they had paid a former assessment for paving in front of their respective properties. The protest was ignored, and later, during the same year, the mayor and council entered into a written contract with a designated company to do the entire work of paving at an agreed price; one third to be paid upon completion of the work during the same year, one third during the succeeding year, and the remaining third to be paid two years from the time of completion. Under the contract the construction company proceeded with the work and paved the street with a bitulithic pavement. The work was completed and accepted during the year in which the contract was made. The mayor and council assessed against the several abutting property owners proportionate shares of the cost of the bitulithic pavement, and in November, 1912, after the work had been completed, issued notices to each of the plaintiffs, ordering the payment of the amounts assessed against them respectively, and advising that in default of payment by a designated date executions would issue. On the hearing the judge refused an interlocutory injunction, and the plaintiffs excepted. The other facts sufficiently appear in the opinion.

*H. H. Perry,* for plaintiffs. *W. M. Johnson,* for defendant.

ATKINSON, J. 1. The point is made that the assessment is illegal because it was made to meet payments on the cost of the paving, which was incurred on an illegal contract. It appears that the city entered into a contract with a contractor to pave the street on condition that the payment for the work should be made in three instalments; one third payable on completion of the work, one third in twelve months from the date of the acceptance of the work, and one third in twenty-four months from that date. This contract is said to be illegal because in effect it amounts to the creation of a debt prohibited by the constitution of the State. Civil Code, § 6563. In *Renfroe* v. *Atlanta,* 140 *Ga.* 81 (78 S. E. 449, 45

L. R. A. (N. S.) 1173), it was held that a contract between a municipality and a private corporation, whereby the latter agreed to construct a public improvement for a total sum, part of which was to be paid in the year in which the contract was made, and the balance in instalments extending through a series of years, amounted to the creation of a debt within the meaning of the constitutional provision that no municipality shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per cent. of the assessed value of the taxable property therein, without the assent of two-thirds of the qualified voters at an election for that purpose to be held as prescribed by law. The power to make the contract was not authorized by a popular vote, and the contract to pave the street was therefore illegal. The fact that the city levied a tax during the current year, sufficient to pay the city's share of the expense, does not render the contract legal.

What, then, is the effect of the illegality of a contract on the power to make and collect the assessment on the abutter's property? "If a contract for the construction of the public improvement has been let and an assessment levied to pay such contract price, the validity of such contract is essential to the validity of the assessment; since otherwise the assessment would be levied to pay the claim not legally due against the city." 1 Page and Jones on Taxation by Assessment, § 483. No lien can be fixed, in invitum, against abutting property to pay an illegal contract made by a city in the construction of a public improvement. Schwiesau *v.* Mahon, 110 Cal. 543 (42 Pac. 1065). In the present case the amount sought to be collected by assessment against abutting property was essentially fixed on the basis of the cost of the improvement specified in an illegal contract between the city and the contractor for repaving the street. In order to determine what amount should be claimed as a lien on the property and for which execution could issue against it, resort must necessarily be had to the illegal contract.

No estoppel against the plaintiffs can arise on account of the fact that the pavement was completed before the filing of the petition, especially in view of the evidence, which shows that they filed their written protest against the construction of the work before it was started. 25 Am. & Eng. Enc. Law, 1206.

. 2. It was further insisted that the assessments were illegal because made without giving plaintiffs notice or affording them a hearing on the reasonableness of the same, and amounted to taking their property without due process of law. The mode of enforcing the collection of assessments for paving streets is set forth in section twelve of the act of 1892 amending the charter of the City of Gainesville (Acts 1892, p. 168), as follows: "Be it further enacted, That the Mayor and Council of said city shall have power and authority to enforce the collection of the amount of any assessment so made for work done either upon the sidewalks or streets, by execution to be issued by the clerk of the council against the real estate so assessed, and against the owner thereof at the date of the ordinance making the assessment; also against any owner of abutting real estate for improvements on sidewalks; and also against any and all property, rights, and franchises of any street-railway company for any assessment for work so done either upon the sidewalks or streets, which execution may be levied by the marshal of said city on said real estate, or upon the property, rights, and franchises of any street-railway company; and after advertising and other proceedings as is provided in cases of sales for city taxes, the same may be sold at public outcry to the highest bidder, and such sale shall vest absolute title in the purchaser; provided, that the defendant shall have the right to file an affidavit of illegality denying that he owes the whole or some part thereof of the sum for which execution was issued, and in case he owes any amount, stating what amount is due, which so admitted to be due shall be paid or collected before the affidavit is received, and the affidavit received for the balance, and all such affidavits so received shall be returned to the superior court of Hall county and there be tried and the issue determined as in cases of illegality, subject to all the pains and penalties provided in cases of illegality for delay." Properly construed, this portion of the charter refers to the enforcement of the cost of paving streets, alleys, etc., as well as to sidewalks. Provision is made for a remedy by illegality, by which a property owner is afforded a hearing as to the reasonableness or lawfulness of the assessment before he is finally required to pay the assessment. Having such a remedy, the property of abutting landowners is not taken without due process of law. *Shippen Brothers Lumber Co.* v. *Elliott*, 134 *Ga.* 699 (68 S. E. 509).

3.  It was urged on behalf of defendant that the right in each of the plaintiffs to file an affidavit of illegality furnished an ample remedy at law, and therefore that it was proper to refuse an injunction upon the application of all of them in one petition. It is true that each of the complainants might have filed an affidavit of illegality, and that the right to do so afforded to each due process of law, as has just been held. But the right of a number of people to proceed separately at law does not necessarily exclude their right to join in an equitable petition for the purpose of avoiding a multiplicity of suits or actions. In *Regenstein* v. *City of Atlanta,* 98 *Ga.* 167 (25 S. E. 428), several owners of property abutting upon a street, which had been improved, filed an equitable petition to enjoin the collection of assessments which had been made against them or their property on account of the local improvement. They attacked the assessment as a whole, on the ground that the city was without authority to renew the pavement. They also alleged defective performance of the work. As to these matters it will be seen that this court dealt with the application for injunction on its merits, holding, that, under the provisions of the charter of the City of Atlanta, the municipal authorities had power to renew worn-out pavements; that the municipal council had a discretion in determining whether a pavement was or was not worn out or no longer serviceable; and that the evidence introduced did not show that such discretion had been abused or arbitrarily used. It was also said that the allegation in regard to defective work was made by counter-affidavits. In addition to this, the complainants alleged that excessive amounts had been assessed against their property. As to this point it was said that affidavits of illegality would furnish them an ample remedy. In *Mayor and Council of Gainesville* v. *Dean,* 124 *Ga.* 750 (53 S. E. 183), two executions for assessments against two different parcels of land, belonging to the same person, had been issued on account of a street improvement, and a third execution had been issued against that person on account of the assessment, and a levy thereof was threatened. It was held, that as all of the executions were against the same person or his property, and involved the same questions, they could be consolidated and all tried together as one action at law, and therefore that a resort to equity was unnecessary.

In the case at bar a single street was paved and assessments

were made against abutting property on account thereof. Several owners of lots abutting on the street joined in filing an equitable petition to enjoin the enforcement of such assessments by execution and sale. All of them attacked the validity of the entire assessment, on the ground of lack of authority in the city to make it, and because the contract which the city had made with the contractors who laid the pavement was unlawful and furnished no valid basis for making assessments against abutting property. Each of them had a common interest in this attack upon the validity of the entire assessment. If each of them had set it up separately by means of affidavit of illegality, the cases thus made could not have been consolidated and tried at law as one, but a number of different cases at law would have had to be tried separately, and in each the same question as to the validity of the whole assessment would have had to be determined. Where owners of property abutting upon a street which is thus improved, and for the pavement of which an assessment against all abutting property is made, desire to join in one attack upon the validity of the entire assessment affecting the property of each, there is such a common bond between them in respect to such attack as to authorize them to join in an equitable petition for the purpose of enjoining the enforcement of the assessment and having it declared void in one proceeding, and thus to avoid a multiplicity of suits, which would arise from requiring each of them to file an affidavit of illegality, and to be subjected to a separate trial. The facts of this case differentiate it from those in which it has been held by this court that the remedy at law was as adequate and complete as by an equitable proceeding.

What has been said disposes of the case and renders it unnecessary to deal with the contention as to the power of the City of Gainesville to repave a street under the act of 1892 (Acts 1892, p. 170), as amended by the act of 1903 (Acts 1903, p. 525), amending the charter of the City of Gainesville, or to refer to Civil Code § 870.

*Judgment reversed. All the Justices concur.*